IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HAROLD SELZER, *et al.*, | : | CIVIL ACTION |
| Plaintiffs, | : | |
| v. | : | |
| | : | |
| DUNKIN' DONUTS, Inc., *et al.*, | : | |
| Defendants. | : | No. 09-5484 |

**MEMORANDUM**

PRATTER, J.                                                                                                           APRIL 3, 2014

Defendants have moved to strike the jury demand of the two remaining Corporate Plaintiffs in this case, AAA Development and AAA Yowza, arguing that the jury waiver provision in a contract signed by the Individual Plaintiffs (the Store Development Agreement, or the "Agreement") should be enforced against these non-signatory corporate entities. The Plaintiffs oppose the motion. The Court will deny the Motion to Strike and honor the Corporate Plaintiffs' jury demand.

BACKGROUND[1]

On July 15, 2005, Harold Selzer and Saul Levitt (the "Individual Plaintiffs") entered into the Store Development Agreement with Defendants (collectively referred to as "Dunkin'"), allowing them to become Dunkin' Donuts franchisees. Plaintiff AAA Development & Management ("AAA Development") is a corporate entity owned by Mr. Selzer and Joseph Glassman. It was formed to develop various franchises, including the Dunkin' franchises that were formed pursuant to the Agreement. A day before the Agreement was executed, the Individual Plaintiffs entered into a development agreement with AAA Development, in which they agreed that AAA Development would be the exclusive developer of the Dunkin' shops to be

---

[1] A more detailed recitation of the facts of this case can be found in the Court's Opinion on the parties' cross motions for summary judgment, *Selzer v. Dunkin' Donuts*, Civil Action No. 09-5484, 2013 WL 4547812 (E.D. Pa. Aug. 28, 2013).

1

opened pursuant to the Agreement and that they would pay AAA Development a fee for each shop in the range of $350,000 to $400,000.

Plaintiff AAA Yowza was formed to own a property at 2350 Mount Rose Avenue, York, Pennsylvania (the "Yowza site"), which Plaintiffs hoped to develop into a Dunkin' shop. Mr. Levitt and AAA Yowza entered into a development agreement for the Yowza site on August 24, 2008. Collectively, AAA Yowza and AAA Development comprise the Corporate Plaintiffs.

As time wore on, the relationship between Individual Plaintiffs and Dunkin' deteriorated. The parties sharply disagree about how and why this happened, but the end result was that Dunkin' terminated the Agreement. The Individual Plaintiffs argue that Dunkin's conduct in ending the Agreement amounted to a breach of the Agreement, and Dunkin', to no one's surprise, argues that they were entitled to end the Agreement under its terms. In any case, as a result of the termination of the Agreement, Individual Plaintiffs were unable to perform under their contracts with Corporate Plaintiffs.

Plaintiffs brought this lawsuit, alleging several claims against Dunkin'. Motions to dismiss and for summary judgment whittled the case down to three claims: a claim for breach of contract brought by Individual Plaintiffs and two claims for tortious interference with contractual relations brought by Corporate Plaintiffs. Because the Agreement contains a jury waiver provision, the parties agree that the breach of contract claim will be tried to the Court. Corporate Plaintiffs, however, made a jury demand as to their tort claims. Dunkin' now moves to strike that jury demand, arguing that these Corporate Plaintiffs have an agency relationship with the individual plaintiffs and that, therefore, the jury waiver provision should be enforced against

them, as well.[2]  Dunkin' also contends that Corporate Plaintiffs have directly benefitted from the Agreement, that the Agreement is integral to their claims against Dunkin', and that Corporate Plaintiffs therefore should be estopped from avoiding the jury waiver provision, *i.e.*, Dunkin' argues that there has been a jury waiver that covers the Corporate Plaintiffs' claims now.

## LEGAL STANDARD

The Seventh Amendment expressly protects a civil litigant's fundamental right to a jury trial.  *See Tracinda Corp. v. DaimlerChrysler AG*, 502 F.3d 212, 222 (3d Cir. 2007) (citing *Aetna Ins. Co. v. Kennedy*, 301 U.S. 389, 393 (1937)).  "The question of a waiver of a constitutional right, including the Seventh Amendment right to a jury trial, is a federal question controlled by federal law."  *Id.*  Thus, the enforceability of a contractual jury waiver provision is a question of federal law.  "[A]s the right of jury trial is fundamental, courts indulge every reasonable presumption against waiver."  *Aetna*, 301 U.S. at 393.  For this reason, a valid jury waiver must be made "knowingly and voluntarily based on the facts of the case."  *Tracinda*, 502 F.3d at 222.  The burden is on the party seeking to enforce the waiver to show that the waiver was knowing and voluntary.  *See First Union Nat'l Bank v. United States*, 164 F. Supp. 2d 660, 663 (E.D. Pa. 2001).

## DISCUSSION

The parties do not dispute that the jury waiver provision at issue here was not executed by the Corporate Plaintiffs themselves.  To enforce the jury waiver provision against the Corporate Plaintiffs, then, Dunkin' must show more than a valid and enforceable contract containing a knowing and voluntary jury waiver – they must provide a viable theory for tying

---

[2] The Agreement states, in the same section that includes the jury waiver provision, that for the purposes of that section, "Developer" is defined as including all of the agents, employees, shareholders, representatives, etc. of the Developer (*i.e.*, of the Individual Plaintiffs).

3

non-signatories to that contractual provision. Dunkin' attempts to do so by relying on traditional contract principles and on equitable arguments.

As an initial matter, the Court notes that relatively few cases, particularly in this circuit, discuss the enforcement of jury waivers by or against non-signatories. Much more abundant are cases discussing the enforcement of arbitration provisions by or against non-signatories. The fundamental differences in these two types of contract provisions are the presumptions attached to their enforcement. While, as noted above, "courts indulge every reasonable presumption *against* [jury] waiver," *Aetna*, 301 U.S. at 393 (emphasis added), "any doubts concerning the scope of arbitral issues should be resolved *in favor* of arbitration," *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110, 1114-15 (3d Cir. 1993) (emphasis added). Because of this stark difference in presumptions, then, in analyzing jury waiver enforceability, cases in which arbitration provisions are *not* enforced are much more persuasive useful authority than cases in which arbitration provisions are enforced. Against this backdrop the Court will examine Dunkin's arguments.

**A. Agency**

Dunkin' first argues that Corporate Plaintiffs were agents of Individual Plaintiffs and that, as such, they should be held to the terms of the Agreement, and specifically to the jury waiver provision in the Agreement. Even assuming Corporate Plaintiffs were agents of Individual Plaintiffs (a proposition Plaintiffs contest), the cases cited by Dunkin' in support of this argument are easily distinguishable from this case.

For example, Dunkin' cites to *Embroidme.com v. Am. Design Studios, Inc.*, Case No. 10-81180-MC-RYSKAMP/VITUNAC (S.D. Fla. July 5, 2011), a Southern District of Florida opinion not reported by either Westlaw or Lexis. Beyond the distinction highlighted above

between arbitration clause and jury waiver clauses, *Embroidme.com* is not persuasive here. The court there held that because a subsidiary corporation that signed an arbitration agreement was the parent corporation's agent, the parent was also bound by the arbitration agreement. Here, in this case, however, no one argues that Individual Plaintiffs were the agents of Corporate Plaintiffs signing the Agreement on behalf of Corporate Plaintiffs.

Somewhat less obviously distinguishable is *SLB Ins., Inc. v. Brown & Brown, Inc.*, Civil Action No. 06-4189, 2007 U.S. Dist. LEXIS 28154 (E.D. Pa. Apr. 16, 2007). In that case, a corporate-plaintiff signed an agreement containing a jury waiver, and the court enforced that jury waiver provision against an employee-plaintiff who worked for the corporate-plaintiff, even though she did not sign the agreement. *Id.* at *5. The court reasoned that the case involved her conduct as an agent of the corporate-plaintiff. However, to reach that result, the court did not discuss the Seventh Amendment, the presumption against enforcing jury waivers, or, indeed, any Third Circuit appellate case law. Rather, the court cited *In re DaimlerChrysler AG Sec. Litig.*, 2003 U.S. Dist. LEXIS 21130 (D. Del. Nov. 9, 2003), in which a Delaware District Court held that a jury waiver provision was enforceable when non-signatory defendants sought to enforce it *against* a signatory plaintiff, and the complaint was based on the non-signatories' actions as agents of the signatory corporation. The *SLB Ins.* court did not discuss, however, the important distinction between that case, in which non-signatories sought to enforce a jury waiver against signatories, and the one then before it, in which signatories sought to enforce a jury waiver against non-signatories. This Court sees that distinction as material.

The Third Circuit Court of Appeals made clear in *Tracinda*, 502 F.3d 212, the appeal of *In re DaimlerChrysler*, 2003 U.S. Dist. LEXIS 21130, that this distinction is key to the analysis of jury waiver provisions, discussing its earlier case, *Bel-Ray Co. v. Chemrite*, 181 F.3d 435 (3d

Cir. 1999). In *Bel-Ray*, the Third Circuit Court of Appeals distinguished the enforcement of arbitration provisions *by* non-signatory agents from the enforcement of arbitration provisions *against* non-signatory agents and refused to enforce an arbitration provision against non-signatory employees (agents) who sought to resist it. Given that arbitration provisions are considerably less disfavored than jury waiver provisions, *Bel-Ray* strongly supports refusing to enforce a jury waiver provision *against* a non-signatory, agent or otherwise.

Because the Third Circuit Court of Appeals has refused to enforce a contractual arbitration provision against a non-signatory agent, this Court will not hold Corporate Plaintiffs, who are non-signatories, to a contractual jury waiver provision, even assuming they are agents of Individual Plaintiffs.

### B.  Equitable Estoppel

In addition to their agency argument, Dunkin' argues that because the Corporate Plaintiffs benefitted from and seek enforcement of other provisions of the contract, they should be estopped from arguing that the jury waiver provision should not be enforced against them. There are no cases from the Third Circuit Court of Appeals addressing whether the principles of equitable estoppel can be used to enforce a contractual jury waiver provision against a non-signatory.

The Third Circuit Court of Appeals has posited that such an argument can be advanced to hold a non-signatory to an arbitration provision. In *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187 (3d Cir. 2001), the court identified two theories of equitable estoppel that had been used by other courts to enforce arbitration agreements. The first applies when a "non-signatory knowingly exploits the agreement containing the arbitration clause despite never having signed the agreement," and is often called

6

"direct benefits" estoppel, as it requires that the non-signatory directly benefitted from the contract in question. *Id.* at 199. The second applies when a non-signatory seeks to enforce an arbitration clause against a signatory "'because of the close relationship between the entities involved, as well as the relationship of the alleged wrongs to the nonsignatory's obligations and duties in the contract . . . and [the fact that] the claims were intimately founded in and intertwined with the underlying contract obligations.'" *Id.* (quoting *Thomson-CSF, S.A. v. American Arbitration Assoc.*, 64 F.3d 773, 779 (2d Cir. 1995)). In *DuPont*, the Third Circuit Court of Appeals found that because the plaintiff in that case did not *directly* benefit from the contract containing the arbitration clause or seek to embrace portions of the contract while repudiating others, equitable estoppel did not apply. *Id.* at 200-01. The court also refused to apply the second type of equitable estoppel – "intertwined claims" estoppel – because that theory may only be used to bind signatories. *DuPont*, 269 F.3d at 202 (reasoning that "[t]he distinction between signatories and non-signatories is important to ensure that short of piercing the corporate veil, a court does not ignore the corporate form of a non-signatory based solely on the interrelatedness of the claims alleged").

At least one court has endorsed an equitable estoppel argument in a case in which a signatory sought to enforce a jury waiver provision against a non-signatory in the context of a franchise relationship. *See Novus Franchising, Inc. v. Superior Entrance Sys., Inc.*, No. 12–cv–204–wmc, 2012 WL 3542451 (W.D. Wis. Aug. 16, 2012).[3] Based on the cases cited in support of its decision, the *Novus* court appears to have used an "intertwined" claims estoppel theory to bind a non-signatory, wholly ignoring the fact that the precedent on which it relied involved a non-signatory enforcing a jury waiver against a signatory. *See id.* at *3 (discussing *MS Dealer*

---

[3] Dunkin' cites several cases applying "direct benefits" estoppel to enforce arbitration clauses against non-signatories. *Novus* is the only case, however, that they cite in which any estoppel analysis is applied in the jury waiver clause context to enforce a jury waiver against a non-signatory.

7

*Serv. Corp. v. Franklin,* 177 F.3d 942, 947 (11th Cir. 1999), without noting that the *MS Dealer* court expressly stated that the theories of equitable estoppel it discussed in the arbitration context involved non-signatories enforcing arbitration provisions against signatories). As already noted, the our Court of Appeals has held in the arbitration context that "intertwined claims" estoppel may not be used to bind a non-signatory. *See DuPont*, 269 F.3d at 202. Thus, *Novus* does not provide direct support for extending "direct benefits" estoppel to cases involving jury waiver provisions.

In contrast, in *In re Credit Suisse First Boston Mortgage Capital, LLC*, 257 S.W.3d 486 (Tex. App. 2008), a Texas appellate court refused to apply "direct benefits" estoppel to bind a non-signatory to a jury waiver clause. Although the court was applying Texas law, rather than federal law, vital to the decision was the same difference in presumptions between jury waiver provisions (disfavored) and arbitration provisions (favored) found in federal law. *Id.* at 492-93. The court ultimately held that the strong presumption in favor of jury trials prevented the "use [of] equitable estoppel as a vehicle to circumvent the required 'knowing and voluntary' waiver standard" that applies to the enforcement of jury waiver provisions. *Id.* at 493.

Because the Third Circuit Court of Appeals has made clear that jury waiver provisions are to be treated differently from arbitration provisions and that either type of contractual waiver is to be enforced sparingly against non-signatories, the Court finds the reasoning in *In re Credit Suisse* persuasive. Enforcement of a jury waiver provision depends upon knowing and voluntary waiver of a fundamental Constitutional right, and Corporate Plaintiffs, as non-signatories to the Agreement, cannot be said to have knowingly or voluntarily waived anything. As another court in this district noted:

> [T]he Court of Appeals[, in discussing the use of arbitration provision cases in the jury waiver context] warned that the analogy is imperfect, because there is a presumption in favor

of enforcing arbitration clauses and against enforcing jury waivers. Where a principle drawn from an arbitration case may have been the result of the underlying presumption in favor of enforcing arbitration clauses, it may not be appropriate to analogize the case to jury waivers. And indeed, courts applying equitable estoppel to arbitration agreements have explicitly relied on the presumption in favor of arbitration.

*Quinn Const., Inc. v. Skanska USA Bldg., Inc.*, Civil Action No. 07-406, 2010 WL 4909587, at *7 (E.D. Pa. Nov. 30, 2010) (citing *Tracinda*, 502 F.3d at 223). Thus, the Court will not extend the equitable estoppel doctrine applied in arbitration clause cases to the jury waiver context, particularly when enforcement is sought against non-signatories.

**CONCLUSION**

For the foregoing reasons, the Court will deny Defendants' Motion to Strike.[4] An appropriate Order follows.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge

---

[4] In their Motion, Dunkin' also requests that, should the Court decide against them on the jury waiver issue, the Court bifurcate the trial, holding a bench trial on the breach of contract claim first and then later holding a jury trial on the tort claims. As explained at the parties' recent status conference in Chambers, that request is denied. All claims will proceed to trial as scheduled simultaneously.