IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HAROLD SELZER, *et al.*, | : | CIVIL ACTION |
| Plaintiffs, | : | |
| v. | : | |
| | : | |
| DUNKIN' DONUTS, Inc., *et al.*, | : | |
| Defendants. | : | No. 09-5484 |

**MEMORANDUM**

**PRATTER, J.**                                                                                JUNE 15, 2015

After nearly six years of highly contentious franchise agreement litigation and a jury trial, one motion remains, a motion for sanctions filed by Plaintiffs for Defendants' failure to produce certain documents that the defense ultimately sought to introduce at trial. In connection with rounds of finger-pointing and conventional briefing on the issue, the Court discussed the subject matter of the motion with counsel and the parties several times during the course of the nine-day trial. After carefully considering the materials themselves, as well as the parties' oral representations, the Court will deny the motion for sanctions, finding that the defense acceptance of the suggested wisdom of forebearing from offering the unproduced documents or asking any witness about the issues discussed therein at trial was a sufficient sanction for this violation of Federal Rule of Civil Procedure 37(c)(1).

**BACKGROUND**[1]

On July 15, 2005, Harold Selzer and Saul Levitt entered into the Store Development Agreement with Defendants (collectively referred to as "Dunkin'"), by which they became Dunkin' Donuts franchisees. Plaintiff AAA Development & Management ("AAA Development") is a corporate entity owned by Mr. Selzer and Joseph Glassman that was formed

---

[1] A more detailed recitation of the facts of this case can be found in the Court's Opinion on the parties' cross motions for summary judgment, *Selzer v. Dunkin' Donuts*, Civil Action No. 09-5484, 2013 WL 4547812 (E.D. Pa. Aug. 28, 2013).

to develop various franchises, including the Dunkin' franchises that were formed pursuant to the Agreement. A day before the Agreement was executed, Messrs. Selzer and Levitt entered into a development agreement with AAA Development, in which they agreed that AAA Development would be the exclusive developer of the Dunkin' shops to be opened pursuant to the Agreement and that they would pay AAA Development a fee in the range of $350,000 to $400,000 for each shop.

Plaintiff AAA Yowza was formed to own a property at 2350 Mount Rose Avenue, York, Pennsylvania (the "Yowza site"), which Plaintiffs hoped to develop into a Dunkin' shop. Mr. Levitt and AAA Yowza entered into a development agreement for the Yowza site on August 24, 2008. (Collectively, AAA Yowza and AAA Development comprise the "Corporate Plaintiffs.")

As time wore on, the relationship between Messrs. Selzer and Levitt on the one hand and Dunkin' on the other deteriorated. The parties sharply disagree about how and why this happened, but the end result was that Dunkin' terminated the Agreement. Messrs. Selzer and Levitt argued that Dunkin's conduct in ending the Agreement amounted to a breach of the Agreement, and Dunkin', to no one's surprise, argued that Dunkin' was entitled to end the Agreement under its terms. In any case, given the termination of the Agreement, Messrs. Selzer and Levitt were unable to perform under their contracts with Corporate Plaintiffs.

Plaintiffs brought this lawsuit, alleging several claims against Dunkin'. Vigorously pursued and equally vigorously resisted motions to dismiss and for summary judgment whittled the case down to three claims: a claim for breach of contract brought by Messrs. Selzer and

Levitt and two claims for tortious interference with contractual relations brought by Corporate Plaintiffs. The jury trial commenced on March 23, 2015.[2]

The first witness at trial was Joseph Glassman, owner of AAA Development. After direct examination ended, the Dunkin' counsel asked the Court for permission to use a small collection of theretofore unproduced documents to cross examine Mr. Glassman. These documents bore dates less than a year prior to the date Messrs. Selzer and Levitt entered into the Store Development Agreement with Dunkin' and the development agreement with AAA Development, and described some problematic issues that had arisen during the course of other dealings between Mr. Glassman and Dunkin', painting Mr. Glassman in an unfavorable light and making the relationship between Mr. Glassman and Dunkin' appear much less smooth than Mr. Glassman had described during his direct testimony. More specifically, the documents largely dealt with the denial of Mr. Glassman's application to become a Dunkin' franchisee and the reasons for that denial, which included statements indicating that Dunkin' employees disapproved of his business methods. Thus, the documents directly contradicted the impression Mr. Glassman tried to give during his testimony and, apparently, in his earlier dealings with Messrs. Selzer and Levitt. Plaintiffs' counsel objected to the trial use of any such documents because they had not been produced during discovery. Defendants argued that the documents were "not relevant" until Mr. Glassman presented himself during direct examination as a model businessman with a long and solid relationship with Dunkin', and that, even if they were relevant, they were privileged.

The Court reviewed the documents *in camera* and concluded that the documents were relevant and not privileged. Given that the documents were not produced during discovery

---

[2] The trial began as both a jury trial for the counts brought by the Corporate Plaintiffs and a bench trial for the breach of contract count. Because, as discussed later, Messrs. Selzer and Levitt settled their claims during the course of the trial, only the jury portion of the trial ultimately proceeded to its conclusion.

3

despite disputing the Court's finding that they were directly responsive to specific document requests served upon Dunkin' over four years ago, counsel for Dunkin' conceded that these documents, as well as the topic that they covered, should be excluded at trial. In addition, the Court invited Plaintiffs to file a motion for sanctions. Plaintiffs did so on March 26, 2015, and counsel for Dunkin' responded a few days later. Between the filing of the sanctions motion and the date defense counsel responded, Messrs. Selzer and Levitt settled their breach of contract claim with Dunkin', leaving only the Corporate Plaintiffs' tortious interference claims. Before closing arguments, Plaintiffs dropped AAA Yowza's claim, leaving only one count for the jury, namely, AAA Development's tortious interference claim. After the trial ended with a defense verdict on AAA Development's remaining count, Plaintiffs filed a reply to the defense opposition to the sanctions motion.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 37(c)(1) states that:

If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
(A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
(B) may inform the jury of the party's failure; and
(C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

Rule 37(b)(2)(A)(i)-(vi) sanctions include:

(i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
(ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
(iii) striking pleadings in whole or in part;
(iv) staying further proceedings until the order is obeyed;
(v) dismissing the action or proceeding in whole or in part; [or]

(vi) rendering a default judgment against the disobedient party.

To determine whether a party violated Rule 37(c)(1) and the sanction warranted, a court must first determine if the failure to comply with discovery obligations was "substantially justified," that is, whether the withholding of documents was justified "to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request. The proponent's position must have a reasonable basis in law and fact. The test is satisfied if there exists a genuine dispute concerning compliance." *Kinney v. Trustees of Princeton Univ.*, No. CIV A 04-5252 MLC, 2007 WL 700874, at *5 (D.N.J. Mar. 1, 2007) (citing *Nguyen v. IBP, Inc.,* 162 F.R.D. 675, 680 (D. Kan. 1995) (citing *Pierce v. Underwood,* 487 U.S. 552, 565 (1988))); *accord Tracinda Corp. v. DaimlerChrysler AG*, 502 F.3d 212, 241 (3rd Cir. 2007). Next, the Court must evaluate whether the late production of documents was harmless, which involves the "consider[ation of] four factors: (1) the prejudice or surprise of the party against whom the excluded evidence would have been admitted; (2) the ability of the party to cure that prejudice; (3) the extent to which allowing the evidence would disrupt the orderly and efficient trial of the case or other cases in the court; and (4) bad faith or willfulness in failing to comply with a court order or discovery obligation." *Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133, 148 (3d Cir. 2000). To the extent sanctions are warranted, "[a]bsent contempt, the only monetary sanctions Rule 37 authorizes are 'reasonable expenses' resulting from the failure to comply with discovery." *Martin v. Brown*, 63 F.3d 1252, 1263 (3d Cir. 1995).

Rule 37(c)(1) allows for sanctions only against the parties, and not the lawyers. *See Grider v. Keystone Health Plan Central, Inc*., 580 F.3d 119, 141 (3d Cir. 2009) ("Rule 37(c)(1) does not permit sanctions against counsel"). However, attorneys who engage in misconduct, including

discovery abuses, are still subject to sanctions under Federal Rule of Civil Procedure 16(f),[3] as well as under 28 U.S.C. § 1927[4] and under the Court's inherent powers,[5] provided that the attorneys receive due process in the imposition of the sanctions.

**DISCUSSION**

Plaintiffs argue that given the substance of the documents, their relevance to the matter was patently obvious, in that they dealt with the relationship between Mr. Glassman, principal of the AAA companies, and Dunkin', which bears directly on whether Dunkin' had any business justification for interfering with the contracts between the Individual Plaintiffs and the Corporate

---

[3] Federal Rule of Civil Procedure 16(f) provides that "[o]n motion or on its own, the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney . . .fails to obey a scheduling or other pretrial order." Potential Orders implicated by defense counsel's conduct in this case include the Court's Orders granting *pro hac vice* admission (Docket Nos. 22, 37) and the Court's Scheduling Orders (Docket Nos. 57, 61).

[4] Section 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. "Although a trial court has broad discretion in managing litigation before it, the principal purpose of imposing sanctions under 28 U.S.C. § 1927 is the deterrence of intentional and unnecessary delay in the proceedings." *Zuk v. Eastern Pennsylvania Psychiatric Institute,* 103 F.3d 294, 297 (3d Cir. 1996) (citation and internal quotations omitted). In order to sanction an attorney under this rule, the Court must find that the attorney acted in bad faith. *See Martin*, 63 F.3d at 1264.

[5] The Third Circuit Court of Appeals has explained the Court's inherent powers as follows: "It has long been understood that certain implied powers must necessarily result to our Courts of justice from the nature of their institution, powers which cannot be dispensed with in a Court, because they are necessary to the exercise of all others." *Fellheimer, Eichen & Braverman, P. C., v. Charter Technologies, Inc.,* 57 F.3d 1215, 1224 (3d Cir. 1995) (quoting *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43 (1991)(internal brackets and citations omitted)). "Among the implied and incidental powers of a federal court is the power to discipline attorneys who appear before it." *Id*. (quoting *Chambers*, 501 U.S. at 43). ("[A] court may assess attorney's fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.") (internal quotations omitted); *Landon,* 938 F.2d at 454 ("[A] prerequisite for the exercise of the district court's inherent power to sanction is a finding of bad faith conduct."); *but see Republic of Philippines v. Westinghouse Electric Corp.,* 43 F.3d 65, 74 n. 11 (3d Cir.1994) (sanctions imposed under the court's inherent authority do not always require a showing of bad faith). Courts may exercise these inherent powers only sparingly. *See Fellheimer, Eichen, Braverman,* 57 F.3d at 1224 (" 'Because of their very potency,' . . . the federal courts must be careful to exercise their inherent powers 'with restraint and discretion.'") (quoting *Chambers,* 501 U.S. at 44).

Plaintiffs. They contend that this clear relevance suggests that the documents were withheld in bad faith, and they posit that, given the very existence of these relevant documents, one can infer that there are other unproduced but relevant documents that were not produced.

Plaintiffs also argue with the clear conviction of hindsight that had they known about these documents, their approach to litigation would have been dramatically different. Indeed, they insist that, in the face of these documents, they would have earlier jettisoned the claims by the AAA entities, reducing the 13 counts in the original complaint to one breach of contract claim, and that this smaller, simpler case would have moved much more quickly to its conclusion.[6] They argue that with these documents in hand, Messrs. Selzer and Levitt likely would have made very different choices about whether to seek a limited bench trial or arbitration, whether to rely on Mr. Glassman's testimony, and how to approach settlement negotiations and trial preparation. Plaintiffs concede, however, that Mr. Glassman and his companies were not as negatively impacted by the withholding of the documents because the Court precluded introduction of the documents at trial. Plaintiffs requested a directed verdict, with a damages award of at least $350,000 for Messrs. Selzer and Levitt, as well as an order preventing Dunkin' from obtaining attorneys' fees for this matter, and an award of attorneys' fees from the time the documents should have been produced in 2010 through the present for counsel's representation of the AAA companies (*i.e.*, the portion of the case Plaintiffs' claim they would have dropped).

Dunkin' and its counsel respond that they acted in good faith in their conduct of discovery. Remarkably, they also continue to argue that the documents were not relevant and

---

[6] In light of their contention that the documents were so damning that they would have dropped the claims of the Corporate Plaintiffs, Plaintiffs' counsel also argue that learning about the content of the documents raised concerns about conflicts of interest for them in representing both Corporate Plaintiffs and the individual Plaintiffs.

7

were privileged, despite the Court's ruling days before Defendants filed their Opposition that the documents *were* relevant and *not* privileged. They argue that even if they were not substantially justified in withholding the documents, any error in professional judgment was harmless, given that they agreed not to introduce the documents at trial, and that therefore any additional sanctions are unwarranted.

Plaintiffs replied to Defendants' Opposition in what they call a "Renewed Motion for Sanctions." In this reply, they acknowledge that the settlement of the Individual Plaintiffs' claims renders many of their requested sanctions moot. Instead, they now seek to preclude Dunkin' from submitting a bill of costs and, on the theory that the withheld documents were not the only relevant documents that Dunkin' failed to produce, to require Dunkin' to take a number of steps to either confirm that there are no more relevant, withheld documents or to produce any relevant documents that have not yet been produced. They argue that they expected the Dunkin' Opposition to include more information explaining the defense's actions, and that without these explanations, it is difficult for the Court to determine the appropriate sanctions.

The Court concludes once again that Dunkin' was not substantially justified in withholding the documents. Whether the documents and their topic fit snugly within the ***Dunkin'*** theory of the case and trial strategy or not has no bearing on whether the documents were discoverable. The material is from a time period shortly before Messrs. Selzer and Levitt signed the Store Development Agreement with Dunkin', they relate directly to Corporate Plaintiffs' relationship with Dunkin', and they are directly responsive to Plaintiffs' document requests. Moreover, it is nearly impossible to take the Dunkin' argument on this point seriously, in light of the fact that the documents dealt with a topic on which Dunkin', too, sought discovery – when arguing initially about the introduction of the documents at trial, Dunkin' pointed out that

they had asked Mr. Glassman questions about the reasons for the failure of his franchise application at Mr. Glassman's deposition, which is the precise topic of the withheld documents. Dunkin' cannot logically contend that Mr. Glassman's relationship with Dunkin' and his failure to obtain approval to operate as a franchisee is not relevant to this case, while at the same time asking questions about the exact topic during discovery. As to privilege, although, as the defense points out, in-house counsel were involved in the discussions contained in the documents, there was no legal advice sought or offered during the course of the communications.

Given that the defense was not substantially justified in withholding the documents, the Court must now turn to whether the withholding was harmless, and, if not, what sanctions are appropriate. Turning first to the "prejudice or surprise of the party against whom the excluded evidence would have been admitted," it is clear that Plaintiffs were wholly unprepared for the content of the documents, and the timing of their production – during trial, at a time when the witness against whom they would principally be used was on the stand and about to be cross-examined – gave Plaintiffs no chance to prepare for the use of the documents at trial. That being said, Plaintiffs' argument that the documents would have fundamentally changed years of trial preparation and strategy, even to the point of persuading Corporate Plaintiffs to abandon their claims, hyperbolically overstates the documents' importance to the case. While the Court agrees that the documents should have been produced and that allowing them to be introduced as evidence at trial with no opportunity to conduct related discovery or to prepare Plaintiffs' witnesses would have been fundamentally unfair, Plaintiffs' contentions about how earlier production would have impacted the course of this litigation are speculative, at best. The facts at trial showed that, despite any reservations Dunkin' had about Mr. Glassman, Mr. Glassman continued to help develop Dunkin' Donuts franchise stores for many years after those

reservations were expressed. Thus, the information was not so damning that one would have expected the Plaintiffs to have pursued a vastly different strategy.

As to "the ability of the party to cure that prejudice," short of excluding the documents, the prejudice the documents created could only be cured by interrupting trial for additional discovery, which supports a finding that the withholding of the documents was not harmless. The next prong of the test – "the extent to which allowing the evidence would disrupt the orderly and efficient trial of the case or other cases in the court" – likewise weighs in favor of that finding for the same reasons.

Finally, the Court turns to a slightly more difficult question: "bad faith or willfulness in failing to comply with a court order or discovery obligation." Despite Plaintiffs' insistence, the Court is not persuaded that Dunkin' actually acted in bad faith in not producing the documents. Indeed, as Plaintiffs will readily concede, the documents paint Mr. Glassman in an unflattering light, but the more Plaintiffs argue that these documents had the potential to destroy the Corporate Plaintiffs' claims, the less likely it seems that Dunkin' acted in bad faith in withholding them. It defies logic that Dunkin' would intentionally fail to disclose relevant documents that were so favorable to them that their production during discovery would have convinced Corporate Plaintiffs to abandon their claims. Certainly, if Dunkin' had believed the documents were that potent and, hence, relevant to the case, Dunkin' would have produced them at the earliest opportunity, rather than continue to litigate the case for four years, at great effort and expense. The Court also accepts defense counsel's statements at the end of trial, expressing apologies and representing that no bad faith was involved in failing to produce the documents at an earlier time. *See* Apr. 2, 2015 Tr., at 7:22-8:25.

In weighing these factors, the Court finds that Defendants did violate Rule 37(c)(1), in that their conduct was neither substantially justified nor harmless. As erroneous as withholding the documents was, the Court concludes that it was not the product of bad faith warranting further attention. The Court is satisfied that the sanction of excluding the documents and the topic they discussed at trial was sufficient punishment for Defendants' actions. As even Plaintiffs recognized, the preclusion of the documents alleviated the harm at trial to the Corporate Plaintiffs, and with the settlement of the individual Plaintiffs' claims, any potential harm to them at trial became moot.

As noted above, "the only monetary sanctions Rule 37 authorizes are 'reasonable expenses' *resulting from* the failure to comply with discovery." *Martin*, 63 F.3d at 1263 (emphasis added). The Court is not convinced that four years of litigation costs *resulted from* the withholding of these particular documents. Certainly the Dunkin' bill of costs bears little or no relation to these particular documents, so the Court will refuse to entertain Plaintiffs' proposed sanction of striking the defense bill of costs, in the absence of any rule or case law permitting such a sanction for a violation of Rule 37(c)(1) and without a direct link between those costs and the violation at hand. Nor is the Court convinced by Plaintiffs' speculation that Dunkin' or its counsel are sitting on a mountain of other unproduced but highly probative documents, let alone documents that would have changed the outcome of this case. Aside from the presence of this handful of relevant documents, Plaintiffs have presented no evidence that would lead the Court to conclude that these withheld documents are anything but an anomaly in a long-running, aggressively litigated case. While the Court again admonishes Dunkin' and their counsel[7] to

---

[7] The Court takes this opportunity to again remind counsel that their appearance in this Court for this case was permitted only by way of the *pro hac vice* motion, which was granted in an Order that emphasized the Court's expectation that counsel would respect and follow all applicable rules, principles, and undertakings of legal and ethical import.

take this experience to heart and take a more professional and less aggressive-for-aggressiveness-sake approach to discovery in the future, the Court is satisfied that this chapter of the litigation can be closed, without the addition of monetary or other sanctions to reinforce the message.

**CONCLUSION**

For the foregoing reasons, the Court will deny Plaintiffs' Motion for Sanctions. An appropriate Order follows.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge
